NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH OAT HOLDINGS, INC., BIOTHANE CORPORATION, ROBERT SAX, MICHAEL HOLTZ, GRAIG ROSENBERGER, MARTIN KAPLAN, RONALD KAPLAN, JOHN MURPHY, AND RCM BIOTHANE, LLC, | : | CIVIL NO. 06-4449(NLH) |
| Plaintiffs, | : | |
| v. | : | |
| RCM DIGESTERS, INC. AND MARK MOSER, | : | **OPINION** |
| Defendants. | : | |

**APPEARANCES:**

Richard J. Kravitz, Esquire
Fox Rothschild, LLP
Princeton Pike Corporate Center, Building 3
997 Lenox Drive
Lawrenceville, NJ 08648-2311
*Attorney for Plaintiffs*

William J. DeSantis
Ballad Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Main Street
Suite 500
Voorhees, NJ 08043
*Attorney for Defendants*

**HILLMAN,** District Judge

    Plaintiffs Joseph Oat Holdings, Inc. ("JOHI"), Biothane

Corporation ("Biothane"), Robert Sax, Michael Holtz, Graig

Rosenberger, Martin Kaplan, Ronald Kaplan, John Murphy[1], and RCM Biothane[2] filed a Verified Complaint consisting of eight claims against Defendants RCM Digesters, Inc. ("RCM Digesters") and Mark Moser.  Plaintiffs demanded a jury trial for "all counts so triable" in their Complaint, and Defendants subsequently demanded a jury trial in their Answer.  Plaintiffs now move to strike Defendants' jury demand because: (1) several of the Counterclaims involve equitable issues to which no right to a jury trial attaches; and (2) Defendants agreed to waive their right to a trial by jury in a series of contracts.  Plaintiffs' motion is granted in part and denied in part.  We also determine what counts of plaintiffs are triable.

## I.  BACKGROUND

Mr. Moser was the founding stockholder of RCM Digesters, a business that promoted, designed, built, and sold anaerobic digester systems.[3]  Contemporaneously, Biothane existed as a multinational corporation specializing in the biological treatment

---

[1] Robert Sax, Michael Holtz, Graig Rosenberger, Martin Kaplan, Ronald Kaplan, and John Murphy are collectively referred to as the "individual plaintiffs."

[2] RCM Biothane is a nominal plaintiff, i.e., one who is named as a plaintiff in an action, but who has no interest in it, having assigned the cause or right of action to another.

[3] Anaerobic digestion systems are vessels containing bacteria that break down organic wastes, such as manure, without air, and produce methane as a byproduct.  (Asset Purchase Agreement at 1.)

2

of industrial wastewaters.  On August 23, 2004, Biothane and RCM Digesters entered into a confidentiality agreement ("the Confidentiality Agreement") that "govern[ed] the conditions of disclosure by RCM [Digesters] to [Biothane] of any confidential information...relating to the contracts, business or technology of RCM [Digesters]."  Subsequently, as a result of a series of agreements between the parties, Biothane's principals and Moser (who was RCM Digesters' principal) created RCM Biothane.

RCM Biothane was formed pursuant to a Certificate of Formation dated February 17, 2005 ("the Certificate of Formation").[4]  On the same date, RCM Biothane entered into a license agreement with Biothane ("the License Agreement"), signed by Biothane and RCM Biothane, to use the federally registered trademark Biothane(R)[5] as part of the name under which it traded.

Four additional agreements were executed on April 21, 2005[6]: (1) a purchase agreement ("the Asset Purchase Agreement"), which was signed by RCM Digesters, Mr. Moser, and RCM Biothane, and under which RCM Biothane purchased "substantially all of the assets

---

[4] Defendant alleges that the Certificate of Formation was induced by fraud and is therefore invalid.

[5] Biothane's Certificate of Registration for federal trademark number 1170077 is dated September 21, 1981, and was renewed on December 11, 2002.

[6] Defendant asserts that the Asset Purchase Agreement, the Employment Agreement, and the Operating Agreement were induced by fraud and are therefore invalid.

3

(real, personal or mixed, tangible or intangible) and business" of RCM Digesters; (2) an employment agreement ("the Employment Agreement"), signed by RCM Biothane and Mr. Moser, which designated Mr. Moser as the "Managing Director" of RCM Biothane; (3) a restrictive covenant agreement (the "Restrictive Covenant Agreement"), signed by Mr. Moser, that governed the parties post-employment obligations; and (4) a Limited Liability Company agreement ("the Operating Agreement"), which was signed by RCM Biothane and JOHI, and under which JOHI was to own 80% of RCM Biothane, and Mr. Moser was to own 20%.[7]  Each of the four agreements of April 21, 2005 contains a jury waiver that provides[8]:

> Irrevocably and unconditionally, each of the parties hereto hereby agrees not to elect a trial by jury and hereby knowingly, intelligently and voluntarily waives all rights he or it may have had, but for this agreement, to trial by jury in any proceeding, dispute, controversy or claim arising from or relating in any way to this agreement or any transaction document.

The parties entered into a separation agreement on August 7,

---

[7] The Operating Agreement provided that JOHI could designate up to six of the members of the Board of Managers ("the BOM"), each with one vote, and that Mr. Moser would have one vote.  The six members of the BOM that JOHI designated were Martin Kaplan, John Murphy, Graig Rosenberger, Ronald Kaplan, Michael Holtz, Robert Sax, and non-voting member Denise Roberts (who is not a party in this case).  JOHI claims to own all of the outstanding capital stock of Biothane.

[8] The four jury waivers have slight variations in wording, however, they are substantially similar and the application of law to each of the waivers is the same.

2006 (the "Separation Agreement").[9]  The Separation Agreement,
signed by the six individual plaintiffs and Mr. Moser, declared
that the Asset Purchase Agreement was null and void and that RCM
Biothane was dissolved.  The Separation Agreement required that
Biothane would not use the RCM name in any of its business
transactions and that Mr. Moser likewise would not use the Biothane
name in any of their business transactions.  The Separation
Agreement does not contain a jury waiver.

## II. DISCUSSION

### A.  Right to Jury Trial

The right to a trial by jury is guaranteed by the Seventh
Amendment of the United States Constitution.  U.S. Const. amend.
VII.  The Seventh Amendment provides, "[i]n Suits at common law,
where the value in controversy shall exceed twenty dollars, the
right of trial by jury shall be preserved."  U.S. Const. amend.
VII.  In federal court, the right to a jury trial is governed by
federal law, regardless of whether or not the claim arises under
federal law.  Simler v. Conner, 372 U.S. 221, 221-22 (1963) (per
curiam) (noting that the right to a jury trial is controlled by

_____

[9]The parties disagree about the circumstances of the meeting
during which the Separation Agreement was signed.  Defendant
further asserts that the Separation Agreement is invalid and
unenforceable because it was obtained by duress and because it
contains mutual mistakes by the parties.

federal law in order to ensure uniformity).  Under Rule 38 of the
Federal Rules of Civil Procedure, a party must serve a demand upon
the other parties in order to preserve the right to trial by jury.
Fed.R.Civ.P. 38.  Once a jury trial has been properly demanded, the
demand may not be withdrawn without the consent of the parties.
Fed.R.Civ.P. 39(d); see Yates v. Dann, 223 F.2d 64, 66 (3d Cir.
1955); Bass v. Hoagland, 172 F.2d 205, 209 (5th Cir. 1949), cert.
denied 338 U.S. 816.  However, according to Rule 39, there are two
exceptions where a trial by jury is not required even after a
demand has been made: "(1) the parties or their attorneys file a
stipulation to a nonjury trial or so stipulate on the record (i.e.,
stipulate to a jury waiver); and (2) the court, on motion or on its
own, finds that on some or all of those issues there is no federal
right to a jury trial."  Fed.R.Civ.P. 39(a).

  1.  **The right to a jury trial may be waived.**

  Although a court should "indulge every reasonable presumption
against waiver," Collins v. Government of Virgin Islands, 366 F.2d
279, 284 (3d Cir. 1966) (quoting Aetna Insurance Co. v. Kennedy,
301 U.S. 389, 393 (1937)), a contractual waiver that is made
knowingly and voluntarily is a valid waiver for claims that (1)
involve the parties to the contract; and (2) arise out of the
contract.  See Fed.R.Civ.P. 39(a); Brookhart v. Janis, 384 U.S. 1,
4 (1966); Med. Air Tech. Corp. v. Marwan Inv., Inc., 303 F.3d 11,
19 (1st Cir. 2002); Bennet v. Pippin, 74 F.3d 578, 580 (5th Cir.

1996), cert. denied 519 U.S. 817; Paracor Fin., Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1166 (9th Cir. 1996); Leasing Serv. Corp. v. Crane, 804 F.2d 828, 832 (4th Cir. 1986) (holding that the right to a jury trial, although fundamental, may be knowingly and intentionally waived by contract); Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1561 (Fed. Cir. 1990); K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 755 (6th Cir. 1985) (stating it is "clear that the parties to a contract may by prior written agreement waive the right to jury trial"); National Equipment Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977); Great Earth Intern. Franchising Corp. v. Milks Development, 311 F.Supp. 2d 419, 437 (S.D.N.Y. 2004) (stating "[a] party cannot unwaive that which it effectively waived"); First Union Nat'l Bank v. United States, 164 F.Supp.2d 660, 663 (E.D.Pa. 2001) (citing Seaboard Lumber Co. v. United States, 903 F.2d 1560 (Fed. Cir. 1990)); Gurfein v. Sovereign Group, 826 F.Supp. 890, 920-21 (E.D.Pa. 1993).

A court may consider several factors in determining whether a waiver was made knowingly and voluntarily: (1) whether there was a gross disparity in bargaining power between the parties; (2) whether the party opposing the waiver had business or professional experience; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous. See RDO Financial Servs. Co. v. Powell, 191 F.Supp.2d 811 (N.D.Tex. 2002); Bank of China v. NBM L.L.C.,

7

2002 WL 1072235 (S.D.N.Y. 2002); <u>Russell-Stanley</u>, 327 F.Supp.2d 252; <u>In re Southern Industrial Mechanical Corp.</u>, 266 B.R. 827 (W.D.Tenn. 2001); <u>GreatAmerica Leasing Corp. v. Cozzi Iron & Metal, Inc.</u>, 76 F.Supp.2d 875 (N.D.Ill. 1999).

Here, we find that where a waiver of jury trial was included in the written agreement at issue, the right to a jury trial was properly waived.  First, there is no indication that there was gross disparity between the parties, particularly because the party opposing the waiver was represented by counsel.  Second, the party opposing the waiver had both business and professional experience.  Third, the party opposing the waiver had the opportunity to negotiate the terms.  Fourth, the clause containing the waiver in each of the agreements was conspicuous because the jury waiver provisions were emphasized by existing in entirely capital letters, <u>see</u> <u>Great Earth</u>, 311 F.Supp. at 437; the provisions were present in each of the four signed agreements, <u>cf.</u> <u>Urban Outfitters, Inc. v. 166 Enterprise Corp.</u>, 136 F.Supp.2d 273 (D.C.N.Y. 2001) (finding the waiver of the right to a jury trial in the original lease did not apply to the sublease despite a general incorporation clause in the sublease agreement that purported to bind subleasee to all of the terms of the original lease); and the waivers expressly provided they were irrevocable.  Therefore, we find that the four contractual waivers of the right to a trial by jury were made knowingly and voluntarily.

2.   **The right to a trial by jury does not attach to equitable claims.**

In addition to stipulating to a waiver of jury trial, certain claims do not give rise to the right of a jury trial.  The right to a trial by jury attaches only to legal claims, not to equitable claims.  <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 41 (1989); <u>Tull v. United States</u>, 481 U.S. 412, 417 (1987); <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 472 (1962); <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 511 (1959).  In an action that contains both equitable and legal claims, the right to a jury trial attaches only to those claims that are legal in nature.  See <u>id.</u>; <u>Amoco Oil Co. v. Torcomian</u>, 722 F.2d 1099, 1103 n. 6 (3d Cir. 1983); <u>Ettelson v. Metropolitan Life Ins. Co.</u>, 137 F.2d 62, 65 (3d Cir. 1943) (stating "[a]lthough under the Federal Rules of Civil Procedure[,] claims and defenses formerly cognizable either at law or equity have been merged into one...civil action, the rules have neither enlarged nor diminished the right to either a jury or court trial.").  However, the Third Circuit has held that for "closely related...claims, one attended by a right to jury trial and the other not, a court may, in the interest of the efficient and expeditious administration of justice, require that both be submitted to a jury for decision upon disputed factual issues." <u>Blake v. Farrell Lines, Inc.</u>, 417 F.2d 264, 266 (3d Cir. 1969).

To determine whether a claim is equitable or legal, the Court

held that a court first must compare the statutory action to
"18th-century actions brought in the courts of England prior to the
merger of the courts of law and equity," and then must determine
whether the remedy sought is legal or equitable in nature.
Granfinanciera, 492 U.S. at 42.  The Court noted that this second
stage of this analysis is more important than the first.  Id.

In making a determination, a court must consider the real
nature of the claims based on all of the pleadings, rather than
simply considering "the terminology a pleader chooses."  Plechner
v. Widener College, Inc., 569 F.2d 1250, 1257 (3d Cir. 1977)
(citing Dairy Queen, 369 U.S. at 478).  Litigants may not avoid
contractual jury waivers by casting their claims in tort, Palmer v.
Conseco Finance Servicing Corp., 198 F.Supp.2d 822, 825 (N.D.Miss.
2002) (citing Grigson v. Creative Artists Agency, LLC, 210 F.3d
524, 526 (5th Cir. 2000)), or by claiming that they were
fraudulently induced into the contract, if the alleged
misrepresentations relate to the contract in general and are
unrelated to the jury waiver, Telum, Inc. v. E.F. Hutton Credit
Corp., 859 F.2d 835, 838 (10th Cir. 1988), cert. denied, 490 U.S.
1021 (1989); see also Allyn v. Western United Life Assurance Co.,
347 F.Supp.2d 1246, 1255 (M.D.Fla. 2004); Russell-Stanley Holdings,
Inc. v. Buonanno, 327 F.Supp.2d 252, 257-58 (S.D.N.Y. 2002).

"The necessary prerequisite to the right to maintain a suit
for an equitable...remed[y] is...the absence of an adequate remedy

10

at law." <u>Dairy Queen</u>, 369 U.S. at 478 (citing <u>Beacon</u>, 359 U.S. at 506-10).  Traditionally, actions based on breach of contract that seek money damages are legal claims, <u>Billing v. Ravin</u>, 22 F.3d 1242, 1245 (citing <u>Dairy Queen</u>, 369 U.S. at 477), as are tort actions for damages to person or property, <u>id.</u> (citing <u>Ross v. Bernhard</u>, 396 U.S. 531, 533 (1970)).

Here, certain of Plaintiffs' claims and Defendants' counterclaims are equitable in nature and, therefore, no right to jury trial attaches.  However, to the extent that factual determinations need to be made, the Court may exercise its discretion " in the interest of the efficient and expeditious administration of justice" and submit factual determinations to the jury at trial.  <u>See Blake</u>, 417 F.2d at 266.  We address each of Plaintiffs' claims and Defendants' counterclaims separately below to determine whether the claims are equitable or legal, and if legal, whether the parties have contractually stipulated to waive the right to a jury trial.

### B.   Plaintiffs' Claims Against Defendants[10]

---

[10] Plaintiffs' Motion to Strike the Jury Demand is with regard to Defendants' Counterclaims only.  Defendants have not

Case 1:06-cv-04449-NLH-JS   Document 37   Filed 08/24/07   Page 12 of 20 PageID: 998
Count 1 alleges breach of the Separation Agreement through Defendants' use of the Biothane(R) trademark and by making false statements in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125. Plaintiffs request injunctive relief and damages. Because this claim is legal in nature in that it alleges breach of contract and violation of federal law, and the Separation Agreement does not contain a jury waiver, Count 1 will be submitted to the jury.

Count 2 is an unfair competition claim in which Plaintiffs assert that Defendants' wrongful continuing use of the Biothane(R) trademark constitutes unfair competition. Plaintiffs request injunctive relief and damages. Although unfair competition is based on equitable principles, House of Westmore v. Denney, 151 F.2d 261, 265 (3d 1945), Plaintiffs are asking for damages, which means this claim is at least partly legal in nature. Because this claim is not governed by any agreement containing a jury waiver, Count 2 will be submitted to the jury.

Count 3 requests a declaratory judgment that the Separation Agreement is valid. Although this claim requests equitable relief, see Lui v. Commission on Adult Entertainment Establishments of the State of Delaware, 369 F.3d 319, 327 (3d

---

made a similar motion to strike the jury demand with regard to Plaintiffs claims. However, Plaintiffs' demand for a jury is only for "issues so triable." Therefore, we address each of the Plaintiffs' counts in order to determine whether the right to a jury attaches.

2004), the Separation Agreement does not contain a jury waiver and certain factual determinations may need to be made concerning the validity of the agreement.  The Court may exercise its discretion at trial and submit such factual determinations to the jury.  A decision on that issue is reserved until the close of all evidence at trial.

Count 4 is a breach of contract claim related to the Separation Agreement.[11]  Because this claim is legal in nature in that breach of contract is a legal determination and the Separation Agreement does not contain a jury waiver, Count 4 will be submitted to the jury.

Count 5 is a claim for breach of the implied covenant of good faith and fair dealing arising out of the Separation Agreement.  Because a claim for breach of implied covenant is at least partly legal in nature, Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1552 n. 2 (10th 1993), and the Separation Agreement does not contain a jury waiver, Count 5 will be submitted to the jury.

Count 6 alleges a breach of fiduciary duty by Mr. Moser,

---

[11] To the extent that the Employment Agreement and the Asset Purchase Agreement have not been terminated by the Separation Agreement, Plaintiffs allege in the alternative that Mr. Moser breached those agreements.  For purposes of this Opinion only, we assume the Separation Agreement is valid, but make no factual determination on that issue at this time.  Therefore, we decide the issue of jury submission with respect to the Separation Agreement only.

13

who was the "managing director" under the Operating Agreement. Plaintiffs also allege that Mr. Moser breached his duty under the Employment Agreement to the extent that it has not been terminated by the Separation Agreement.  Although this claim is legal in nature, both the Operating Agreement and the Employment agreement contain jury waivers.  Therefore, Count 6 will not be submitted to the jury.

Count 7 is related to the Accounts Receivable and the Separation Agreement.  Plaintiffs request a Writ of Replevin for Accounts Receivable and damages.  Replevin is legal in nature. Hitt v. Stephens, 675 N.E.2d 275, 278 (4th 1997); Child's Play Ltd. v. A & A, Inc., 642 A.2d 170, 172 (Me. 1994).  Therefore, because the Separation Agreement does not contain a jury waiver, Count 7 will be submitted to the jury.

Count 8 is a misrepresentation claim with regard to the Employment Agreement, the Operating Agreement, and the Asset Purchase Agreement.  Although misrepresentation is a legal claim, City of Rome, Italy v. Glanton, 184 F.R.D. 547, 551 (E.D.Pa. 1999), the Employment Agreement, the Operating Agreement, and the Asset Purchase Agreement all contain jury waivers.  Therefore, Count 8 will not be submitted to the jury.

## C.  Defendants' Counterclaims Against Plaintiffs

Defendants allege sixteen counterclaims against Plaintiffs and request injunctive relief and damages.  Plaintiffs

14

move to strike the demand for a jury trial on all Counts.

Count 1 of the counterclaims alleges fraud in the inducement regarding certain contracts, including the Asset Purchase Agreement, the Operating Agreement, the Restrictive Covenant Agreement, and the Separation Agreement. Among other requests, Defendants are asking for a declaratory judgment that the contracts are void. As discussed above, the jury waivers of the Asset Purchase Agreement, the Operating Agreement, and the Restrictive Covenant Agreement are not vitiated by Defendants' general claim of fraud. See Telum, 859 F.2d at 834-39. Therefore, the Motion is granted with respect to the part of Count 1 related to the Asset Purchase Agreement, the Operating Agreement, and the Restrictive Covenant Agreement, all of which contain jury waiver provisions, and these issues will not be submitted to the jury. The Motion is denied with respect to the part of Count 1 alleging fraud in the inducement related to the Separation Agreement because the claim is legal and Separation Agreement does not have a jury waiver and, therefore, will be submitted to the jury.

Count 2 is a breach of contract claim regarding the Operating Agreement. Because the Operating Agreement contains a jury waiver, the Motion is granted with regard to this claim, and Count 2 will not be submitted to the jury.

Counts 3 and 4 allege breach of contract with respect to the Separation Agreement. Because the claims are legal in nature

15

and the Separation Agreement does not contain a jury waiver, the Motion is denied with respect to these claims, and Counts 3 and 4 will be submitted to the jury.

Count 5 is a claim for breach of the implied covenant of good faith and fair dealing regarding the Operating Agreement, the Employment Agreement, and the Separation Agreement. The Operating Agreement and the Employment Agreement have jury waivers, and therefore the Motion is granted with respect to those claims and they will not be submitted to the jury. The Separation Agreement does not contain a jury waiver and the claim is legal in nature. See Jensen, 998 F.2d at 1552 n. 2. Therefore, the Motion will be denied with respect to the part of this claim relating to the Separation Agreement and will be submitted to the jury.

Count 6 alleges breach of fiduciary duty. Because the claim is legal in nature, see Abney v. Amgen, Inc., 443 F.3d 540, 546 (6th 2006), and is not governed by an agreement containing a jury waiver, the Motion is denied with respect to this claim, and Count 6 will be submitted to the jury.

Count 7 alleges breach of contract regarding the Employment Agreement. Although the claim is legal in nature, the Employment Agreement contains a jury waiver. Therefore, the Motion is granted with respect to this claim, and Count 7 will not be submitted to the jury.

Count 8 alleges violation of the Anticybersquatting Act,

16

15 U.S.C. § 1125(d) in relation to rights pertaining to electronic information and trademarks that are specifically addressed by the Asset Purchase Agreement.  The Defendants specifically refer to the Asset Purchase Agreement in their claim.  Although the claim is legal in nature in that it alleges violation of federal law, the Asset Purchase Agreement contains a jury waiver.  Therefore, the Motion is granted with respect to this claim, and Count 8 will not be submitted to the jury.

Count 9 alleges trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a).  Unlike Count 8, Defendants have not implicated the Asset Purchase Agreement in this Count.  Because the claim is legal in nature in that it alleges violation of federal law and the claim is not governed by an agreement containing a jury waiver, the Motion is denied with respect to this claim, and Count 9 will be submitted to the jury.

Count 10 alleges unlawful interference with prospective economic advantage with regard to the Asset Purchase Agreement.  Although the claim is legal in nature, the Asset Purchase Agreement contains a jury waiver.  Therefore, the Motion is granted with respect to this claim, and Count 10 will not be submitted to the jury.

Count 11 alleges breach of the Confidentiality Agreement, which does not contain a jury waiver.  Therefore, because the claim is legal in nature in that it alleges breach of contract, the

17

Motion will be denied with respect to this claim, and Count 11 will be submitted to the jury.

Count 12 alleges misappropriation of trade secrets in relation to the Confidentiality Agreement, which does not contain a jury waiver.  Therefore, because the claim is legal in nature in that it is a contract claim, the Motion will be denied with respect to this claim, and Count 12 will be submitted to the jury.

Count 13 is a claim for unjust enrichment.  Because the claim is contractual and legal in nature, see Dastgheib v. Genentech, Inc., 457 F.Supp.2d 536, 546 (E.D.Pa. 2006), and is not governed by an agreement containing a jury waiver, the Motion is denied with respect to this claim, and Count 13 will be submitted to the jury.

Count 14 is a libel claim with respect to a memorandum dated October 24, 2006.  Because the claim is legal in nature, see D'Amario v. Russo, 750 F.Supp. 560, 562 (D.R.I. 1990), and is not governed by an agreement containing a jury waiver, the Motion is denied with respect to this claim, and Count 14 will be submitted to the jury.

Count 15 alleges intentional infliction of emotional distress in relation to a work contract, the operation of RCM Biothane, and the dissolution of RCM Biothane.  Because a claim of intentional infliction of emotional distress is legal in nature, Jackson v. Chubb Corp., 193 F.R.D. 216 (D.N.J. 2000), and is not

18

governed by an agreement containing a jury waiver, the Motion is denied with respect to this claim, and Count 15 will be submitted to the jury.

Count 16 is an application for a decree of judicial dissolution of RCM Biothane under Del.C. § 18-802.  Because this is an equitable claim, the right to a trial by jury does not attach.  See Woodward v. Andersen, 627 N.W.2d 742, 748 (Neb. 2001).  However, certain factual determinations may need to be made concerning the dissolution of RCM Biothane.  The Court may exercise its discretion at trial and submit such factual determinations to the jury at the close of all the evidence.

## IV. CONCLUSION

The following claims and counterclaims are legal in nature and not governed by a waiver of jury trial and, therefore, will be submitted to the jury: Plaintiffs' Counts 1, 2, 4, 5, and 7; and Defendants' Counts 1 (only the portion relating to the Separation Agreement), 3, 4, 5 (only the portion relating to the Separation Agreement), 6, 9, 11, 12, 13, 14, and 15.  The following claims are governed by a waiver of jury trial and will not be submitted to the jury: Plaintiffs' Counts 6 and 8; and Defendants' Counts 1 (only the portion relating to the Asset Purchase Agreement, the Operating Agreement, and the Restrictive Covenant Agreement), 2, 5 (only the portion relating to the Operating Agreement and the Employment Agreement), 7, 8, and 10.  The following claims are partly

19

equitable but may require factual determinations of which the Court may exercise its discretion and submit to the jury for a factual determination: Plaintiffs' Count 3, and Defendants' Count 16.  An Order consistent with this Opinion will be issued.


Date: August 24, 2007                      s/ Noel L. Hillman
                                    _____

At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.