[Doc. No. 49]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOSEPH OATS HOLDINGS, INC., et al., | |
| Plaintiffs, | Civil No. 06-4449 (NLH) |
| v. | |
| RCM DIGESTERS, INC., et al. | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on defendants' Motion for Leave to File an Amended Counterclaim and a Third Party Complaint [Doc. No. 49]. The Court has received plaintiffs' opposition [Doc. No. 54] and defendants' reply [Doc. No. 56]. For the reasons to be discussed defendants' motion is GRANTED. The Court exercises its discretion pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1 to decide defendants' motion without oral argument.

BACKGROUND

This case arises out of a failed business arrangement between plaintiffs and defendants. Prior to April 2005, defendant Mark Moser ("Moser") did business as RCM Digesters ("RCMD"). RCMD designed and sold agricultural waste treatment systems that used an anaerobic digestion technology. In 2005, plaintiffs and defendants formed RCMB Biothane, L.L.C. ("RCMB"). The majority owner of RCMB is plaintiff Joseph Oats Holding, Inc. ("JOHI"). Before RCMB was

formed plaintiff Biothane Corporation ("Biothane") was in the business of designing, building and selling anaerobic digester systems primarily for wastewater treatment and manufacturing purposes. Pursuant to an April 21, 2005 Asset Purchase Agreement, Moser's assets in RCMD were sold to RCMB.  JOHI held an 80% ownership interest in RCMB and Moser held the remaining 20%.  On April 21, 2005, RCMB also entered into an Employee Agreement with Moser pursuant to which Moser was appointed as the "Managing Director" of RCMB.  Each of the six (6) individual plaintiffs was a Manager of RCMB.  Except for Moser each of the managers also worked for and/or had a direct or indirect interest in Biothane. Moser had no interest in Biothane. Defendants' Brief ("DB") at 3, Doc. No. 49.

The business relationship between plaintiffs and defendants deteriorated to the point that on August 7, 2006, the parties executed a "Separation Agreement."  Plaintiffs allege in their complaint that Moser failed to comply with his contractual obligations, continuously refused to comply with the directives of RCMB's Board of Managers, and conducted business using the RCMD trade name while employed by RCMB. See Complaint at ¶¶29-31, Doc. No. 1.  In response, defendants claim the individual plaintiffs intentionally took actions to divert business away from RCMB and toward Biothane and to assure that monies owed to RCMB from Biothane were not paid to it.  See Defendants' Counterclaim at

2

¶¶88-99, Doc. No. 10. Defendants also claim that plaintiffs prevented RCMB from succeeding as an independent and viable business. Id. at ¶¶110-124. In addition, Moser claims that $200,000 owed to him pursuant to the Asset Purchase Agreement was placed into escrow for his benefit but that the money was eventually paid over to and improperly obtained by the proposed third-party defendant, Joseph Oat Companies, Inc. ("JOCI"). DB at 8.

Plaintiffs filed their complaint on September 20, 2006. On September 29, 2006, the Honorable Noel L. Hillman entered an Order for Preliminary Injunction [Doc. No. 6] which preliminarily enjoined defendants from using the "Biothane Trademark" except as necessary "to wind down the affairs of RCM Biothane, LLC, and except for the inadvertent use by defendants of the name 'Biothane' as a result of the parties' joint computer systems...." On November 6, 2006, defendants filed their answer to plaintiffs' complaint with their sixteen count counterclaim.

Defendants' proposed amended counterclaims seek to add "allegations regarding Plaintiffs' illegal accessing and copying of Defendants' computer files and to conform the allegations to the evidence and Plaintiffs' admissions." See DB at 1. The amended counterclaims also seek to add state derivative claims on behalf of RCMB, of which Moser is a minority shareholder. In addition, the amended counterclaims seek to add allegations regarding the

3

$200,000 placed into escrow for Moser that was paid to JOCI. Id. at 1-2. Moser also seeks leave to file a third-party complaint against JOCI regarding the escrow payment.

Plaintiffs deny all allegations of liability and contend that defendants' motion should be denied for four reasons. First, plaintiffs argue defendants' new counterclaims are untimely and prejudicial. Second, plaintiffs argue defendants' claims regarding the alleged illegal accessing of their computer system are futile because plaintiffs' actions were taken pursuant to a "litigation hold that the defendants themselves requested." See Plaintiffs' Brief ("PB") at 7. Third, plaintiffs argue that Moser cannot assert derivative claims on behalf of RCMB because he has a conflict of interest. Fourth, plaintiffs argue that Moser's proposed third-party complaint naming JOCI is futile because it does not set forth a claim for contribution or indemnity.

DISCUSSION

Defendants' Motion is Not Untimely and Prejudicial

The Court rejects plaintiffs' argument that defendants' motion is untimely and prejudicial. Unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendments, [or] futility of the amendment," leave to amend should be "freely given." Foman v. Davis, 372 U.S. 178, 182 (1962); Long

4

v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). Leave to amend a complaint on the ground of undue delay should only occur where the delay causes prejudice to the non-moving party. It is well-settled that prejudice to the non-moving party is the touchstone for the denial of a request to amend a pleading. Cincerella v. Egg Harbor Tp. Police Dept., C.A. No. 06-1183 (RBK), 2007 WL 2682965, *2 (D.N.J. Sept. 6, 2007)(citations omitted). A non-moving party is found to be prejudiced when it faces an undue burden or difficulty in proceeding with the litigation. Id. In order to claim undue prejudice a party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." Id. (citations omitted). The Third Circuit has stated that "[p]rejudice under the rule means undue difficulty in prosecuting a lawsuit as a result of a change of facts or theories on the part of the other party." Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300 (3d Cir. 1969).

Defendants' motion was not filed unduly late and if granted will not cause plaintiffs to suffer undue prejudice. Plaintiffs have not alleged that the delay in asserting the new counterclaims resulted in the loss of relevant evidence. In addition, the Court regrettably notes that the close of fact discovery in the case is not imminent. Therefore, plaintiffs will have an adequate opportunity to conduct discovery relevant to the new legal claims

in the case. In addition, as set forth in defendants' moving papers, they only recently discovered the facts upon which the amended counterclaims are based. (See Defendants' Reply Brief ("DRB") at 4-6, Doc. No. 56). Promptly after learning these facts in discovery defendants filed their motion. Accordingly, the Court rejects plaintiffs' argument that defendants' motion is untimely and prejudicial.

<u>Defendants' Computer Related Counterclaims are not Futile</u>

Counts 18-24 of defendants' amended counterclaims address their contention that plaintiffs illegally accessed their computer system after the parties' Separation Agreement was signed. Defendants contend that in November 2006, plaintiffs accessed RCMD's computer system in Oakland, California, and copied trade secrets and other proprietary information for their own use. <u>See</u> Amended Counterclaims at ¶¶204-212, Exhibit B to Defendants' Motion. Plaintiffs argue that these counterclaims are futile. According to plaintiffs, since they were "legally obligated under Fed. R. Civ. P. 34 and ... case law to preserve all potentially relevant documents in the [parties'] joint computer system, regardless of what tentacle of that system contained the data," they cannot be liable for accessing RCMD's computers. PB at 8. Plaintiffs also argue that defendants should be judicially estopped from asserting these new counterclaims because defendants asked them to preserve relevant documents which they knew were located on

in the case. In addition, as set forth in defendants' moving papers, they only recently discovered the facts upon which the amended counterclaims are based. (See Defendants' Reply Brief ("DRB") at 4-6, Doc. No. 56). Promptly after learning these facts in discovery defendants filed their motion. Accordingly, the Court rejects plaintiffs' argument that defendants' motion is untimely and prejudicial.

<u>Defendants' Computer Related Counterclaims are not Futile</u>

Counts 18-24 of defendants' amended counterclaims address their contention that plaintiffs illegally accessed their computer system after the parties' Separation Agreement was signed. Defendants contend that in November 2006, plaintiffs accessed RCMD's computer system in Oakland, California, and copied trade secrets and other proprietary information for their own use. <u>See</u> Amended Counterclaims at ¶¶204-212, Exhibit B to Defendants' Motion. Plaintiffs argue that these counterclaims are futile. According to plaintiffs, since they were "legally obligated under Fed. R. Civ. P. 34 and ... case law to preserve all potentially relevant documents in the [parties'] joint computer system, regardless of what tentacle of that system contained the data," they cannot be liable for accessing RCMD's computers. PB at 8. Plaintiffs also argue that defendants should be judicially estopped from asserting these new counterclaims because defendants asked them to preserve relevant documents which they knew were located on

RCMD's computers. Plaintiffs also argue defendants' exclusive means of redress for the breach of their computers is to file a discovery motion, not to file a counterclaim. Id. at 8-9.

As interpreted by the Third Circuit, "[f]utility means that the complaint, as amended, would fail to state a claim on which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)(internal quotations omitted). In determining whether an amendment is futile, "the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id. The standard of review for a Rule 12(b)(6) motion requires the court to accept as true all allegations in the complaint, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Defendants' amended counterclaims aver that in November 2006, plaintiffs "secretly and remotely accessed and copied virtually all electronic files of RCM Digesters stored in Oakland, California, including files containing RCM Digesters' trade secrets, design documents, plans, specifications, drawings, and other proprietary business information." See Amended Counterclaims at ¶207. Defendants also aver that the computer files were "accessed and copied without authorization or knowledge of Mr. Moser or anyone

7

else at RCM Digesters." Id. at ¶208. Based upon these allegations, coupled with defendants' contention that plaintiffs insisted after August 7, 2007, that RCMD was dissolved and that Moser could not conduct any business in the name of RCMD (id. at ¶204), the Court rejects plaintiffs' argument that defendants' computer accessing counterclaims are futile. Plaintiffs do not cite any legal authority for their contention that their duty to preserve relevant documents immunizes them from liability for accessing a computer system owned by another party. Nor do plaintiffs point to any applicable "safe harbor" provision in the statutes cited in defendants' amended counterclaims.

The Court also does not agree with plaintiffs that Judge Hillman's Order for Preliminary Injunction [Doc. No. 6] ruled as a matter of law that plaintiffs were authorized to access RCMD's computers. (PB at 8). The hearing before Judge Hillman did not finally decide this issue. Further, it is not clear at this time if the computer system referenced in Judge Hillman's Order is the same computer system about which defendants now complain. Even if plaintiffs' "preservation" defense was viable, a finding this Court rejects, the Court still would not rule defendants' amended counterclaims are futile. Defendants are entitled to explore in discovery plaintiffs' motivation for accessing their computers and to determine whether plaintiffs intended to steal their information rather than to preserve documents for litigation. See DRB at 1-3.

At this stage of the case the Court is not compelled to accept at face value plaintiffs' contention that the sole reason they accessed defendants' computer system was to preserve documents for litigation. Indeed, the opposite is true since at this juncture the Court is bound to view the facts in the amended counterclaims in the light most favorable to defendants.

The Court also rejects plaintiffs' argument that defendants are judicially estopped from seeking relief. Judicial estoppel is an "extraordinary remedy" which should only be applied to avoid a miscarriage of justice. Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)(citations and internal quotations omitted); Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003). In New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001), the Supreme Court identified three relevant factors to analyze when deciding whether the doctrine of judicial estoppel should be invoked: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether the party has succeeded in persuading a court to accept the earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. The Court finds that the extraordinary circumstances that must be present to

invoke judicial estoppel are not present here.  A party's insistence that relevant documents be preserved is not inconsistent with the notion that an opposing party should not illegally access its computers.  Further, absent binding legal precedent to the contrary the Court finds that it would be illogical to accept plaintiffs' argument that the duty to preserve litigation documents immunizes it from liability for illegally accessing its adversary's computers.

The Court also rejects plaintiffs' argument that the exclusive remedy for their alleged illegal access is through the avenue of discovery sanctions.  Plaintiffs do not cite any authority to support their argument.  The case relied upon by plaintiffs, <u>Fayemi v. Hambrecht & Quist, Inc.</u>, 174 F.R.D. 319 (1997), merely stands for the proposition that a District Court has the inherent authority to sanction an employee for attempting to use in litigation material improperly obtained outside the discovery process.  The case does not hold that other available sanctions for the improper conduct are pre-empted by discovery rules.  To be sure, it is possible that after relevant discovery is conducted defendants will not be able to make out a viable cause of action regarding its computer access claim.  However, at this stage of the litigation defendants have the right to pursue the claim.

<u>Defendants' Derivative Claims are Viable</u>

Counts 25-29 of Moser's amended counterclaims allege

10

derivative claims on behalf of RCMB.  The only argument plaintiffs make to oppose the amendment is that Moser cannot assert the derivative claims because he has a conflict of interest.  For the reasons to be discussed, plaintiffs' argument is rejected and Moser is granted leave to assert his derivative counterclaims.

Pursuant to Fed. R. Civ. P. 23.1(a), one or more shareholders or members of a corporation or an unincorporated association may bring a derivative action to enforce a right that the corporation or association may properly assert but failed to enforce.  However, "if it appears that the [counterclaim] plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association" the derivative action may not be maintained. Fed. R. Civ. P. 23.1(a).   To determine adequate representation: (1) the plaintiff's attorney must be qualified, experienced and generally able to conduct the litigation, and (2) the plaintiff must not have interests antagonistic to those of the class. Vanderbilt v. Geo-Energy Ltd., 725 F.2d 204, 207 (3d Cir. 1983).[1]  In this case plaintiffs bear the burden of proving that Moser is an inadequate representative. Lewis v. Curtis, 671 F.2d 779, 788 (3d Cir.), cert. denied, 459 U.S. 880 (1982), abrogated on other grounds, Garber v. Lego, 11 F.3d 1197 (3d Cir. 1993).

---

[1] Plaintiffs do not contest the qualifications of defendants' attorneys to pursue Moser's derivative claims.

11

Plaintiffs argue that Moser is in a "hopelessly irreconcilable conflict" situation because on the one hand he is seeking to represent the interests of RCMB and its shareholder JOHI, while at same time he is asserting claims against RCMB. PB at 11. Although this argument may have facial appeal it does not withstand close scrutiny. Plaintiffs gloss over the fact that the Court's duty is to examine whether Moser has a conflict with "similarly situated" shareholders, not whether Moser has a conflict with all of RCMB's shareholders. The only similarly situated shareholder Moser purports to represent is himself. Accordingly, if Moser is permitted to represent a "class of one" then no conflict exists and he can pursue his derivative claims.

Although the issue has not been squarely addressed by the Third Circuit, other courts have held that a single shareholder such as Moser may pursue a derivative claim. See Larson v. Dumke, 900 F.2d 1363, 1368 (9th Cir. 1990)("[a]lthough the cases are not uniform, we are persuaded that a single shareholder may bring a derivative suit"); Jordon v. Bowman Apple Products Co. Inc., 728 F.Supp. 409, 413 (W.D. Va. 1990)("the court concludes that the plaintiff constitutes a legitimate class of one and adequately and fairly represents those shareholders similarly situated"); Halsted Video, Inc. v. Guttillo, 115 F.R.D. 177 (N.D. Ill. 1987); Nagy v. Riblet Products Corp., et al., No. S90-202 (RLM), 1991 WL 332633 (N.D. Ind. Oct. 16, 1991). The decision in Halsted Video explains

why a class of one is permitted. If this were not the case, then a minority shareholder such as Moser would be left without a remedy for the alleged misconduct of all other shareholders. 115 F.R.D. at 180. Moreover, the fact that Moser is a "class of one" distinguishes this case from Ryan v. Aetna Life Insurance Co., 765 F.Supp. 133 (S.D.N.Y. 1991), the primary case plaintiffs rely upon to demonstrate that a conflict of interest exists. In Ryan, the disqualified plaintiff purported to represent numerous other shareholders in his derivate claim against VHA Enterprises, Inc., while at the same time he pursued a class action against the company. In this case Moser is the only "similarly situated" shareholder.

Plaintiffs argue that since Moser has ongoing litigation with RCMB he is disqualified from pursuing derivative claims against RCMB. However, the mere existence of litigation between a derivative plaintiff and a corporation is not in and of itself a basis to disqualify the derivative plaintiff. For example, in Vanderbilt v. Geo-Energy Limited, 725 F.2d 204 (3rd Cir. 1983), the Third Circuit permitted the plaintiff to pursue derivative claims against the corporate defendant even though he was involved in separate litigation with the corporation. See also Nagy, supra.

A court may bar a plaintiff from pursuing a derivative claim where the plaintiffs' motivation is not to protect the interests of the corporation but to use the lawsuit as leverage to extract a

13

favorable settlement.  Smith v. Ayres, 977 F.2d 946, 949 (5th Cir. 1992).  At this time, the Court declines to rule as a matter of law that Moser is pursuing his derivative claims for an illegitimate purpose.  The record on this point is simply not developed enough to make this decision.  Further, in Vanderbilt, supra, it was significant to the Third Circuit that the shareholder who was simultaneously litigating with the defendant corporation and pursuing derivative claims did not initiate litigation against the corporation.  The same situation is present here.  Moser's counterclaims were only asserted after plaintiffs filed their complaint.

In considering whether a derivative plaintiffs' interests are antagonistic to those of the class, a court must consider a myriad of factors, including the following:

> economic antagonisms between [the] representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between plaintiffs and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and finally, the degree of support plaintiff was receiving form the shareholders he purported to represent.

Vanderbilt, supra, 725 F.2d at 207 (citation omitted). No one factor is dispositive and the court must examine the combination of factors as they apply to the circumstances of the case.  Recchion on Behalf of Westinghouse Elec. Corp. v. Kirby, 637 F. Supp. 1309,

14

1314 (W.D.Pa. 1986). The antagonism "must go to the subject matter of the suit." Id. Applying the Vanderbilt criteria to this case, the Court is bound to conclude that a fact intensive analysis must be done to determine if Moser is an adequate derivative plaintiff. Given the present record and procedural posture of the case, this Court does not find that at this time Moser must be disqualified from pursuing his derivative claims. Accordingly, Moser's request for leave to add derivative counterclaims is granted.

Moser's Third-Party Complaint is Appropriate Pursuant to Fed. R. Civ. P. 13(h)

Moser proposes to file a third-party complaint against JOCI on the theory that JOCI improperly obtained his escrow funds. Moser relies upon Fed. R. Civ. P. 14(a) which provides that a defendant may file a third-party complaint against a "nonparty who is or may be liable to it for all or part of the claim against it." Pursuant to this Rule a defendant may attempt to transfer to the third-party defendant the liability asserted against him by the original plaintiff. See generally 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §1446 (1990). The liability of the third-party defendant cannot simply be an independent or related claim but must be based upon plaintiff's claim against defendant. In this case plaintiffs correctly point out that Moser's claims against JOHI for conversion and unjust enrichment are independent of plaintiffs' claims against Moser and therefore joinder pursuant

15

to Rule 14(a) is improper.  In Erkins v. Case Power & Equipment Co., 164 F.R.D. 31, 32 (D.N.J. 1995), the court noted that Rule 14 permits a third-party plaintiff to join a party who is derivatively or secondarily liable, but not to join a person who is or may be liable solely to the third-party plaintiff.  Id. at 32-33.  See also F.D.I.C. v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994)("FDIC")(holding that defendants third-party claim was improper under Rule 14 because the proposed third-party defendant's liability was not derivative of defendant's liability).  These decisions support plaintiffs' argument that Moser's escrow counterclaims may not be asserted pursuant to Rule 14(a).

Although Moser's third-party complaint is not appropriate pursuant to Rule 14(a), the Court will grant Moser leave to file the complaint pursuant to Fed. R. Civ. P. 13(h).  Rule 13(h) should be applied liberally to avoid multiplicity of litigation.  See Wright, Miller & Kane, supra, at ¶1434.  Moser's claims against JOHI relate to the counterclaim he already asserted against plaintiffs regarding the escrow payments in dispute.  See Amended Counterclaims, ¶¶125-28, Exhibit A to Defendants' Certification. Rule 13(h) provides that the addition of a person as a party to a counterclaim is governed by Fed. R. Civ. P. 19 and 20.  Rule 20(a)(2) provides that parties may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect of or arising out of the same

16

transaction, occurrences, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." The allegations in Moser's amended counterclaims concern the same escrow issues that are the subject of the proposed third-party complaint. It is plain, therefore, that the allegations against JOCI arise out of the same "transaction, occurrence or series of transactions or occurrences" as the claims against plaintiffs. See, e.g., Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc., 292 F.3d 384, 390 (3d Cir. 2002)(the term "transaction or occurrence" is construed generously to promote judicial economy). It is just as clear that there are common questions of law or fact regarding the two sets of claims. "Rule 13(h) authorizes the court to join additional persons in order to adjudicate a counterclaim ... that already is before the court or one that is being asserted at the same time the addition of a nonparty is sought." F.D.I.C., 27 F.3d at 873. This means that a counterclaim may not be directed solely against non-parties, but must involve at least one party. Id. Since this is precisely the situation that exists in this case, the Court will grant Moser leave pursuant to Rules 13(h) and 20 to file and serve his third-party complaint against JOHI. Accord F.D.I.C., supra (denying defendants' third-party complaint pursuant to Rule 14 but granting defendants leave pursuant to Rule 13(h)).

17

CONCLUSION

    For all the forgoing reasons, and for good cause shown,

    IT IS HEREBY ORDERED this 27th day of March, 2008, that: Defendants' Motion for Leave to Amend its Counterclaims and to File a Third-Party Complaint against JOCI is GRANTED; and

    IT IS FURTHER ORDERED that by April 1, 2008, defendants shall file the amended counterclaims and third-party complaint attached as Exhibits to their Motion to Amend [Doc. No. 49]. The pleadings shall be served in accordance with the provisions of the applicable Federal Rules of Civil Procedure.

                                          s/Joel Schneider
                                          JOEL SCHNEIDER
                                          United States Magistrate Judge