**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH OAT HOLDINGS, INC., BIOTHANE CORPORATION, ROBERT SAX, MICHAEL HOLTZ, GRAIG ROSENBERGER, MARTIN KAPLAN, RONALD KAPLAN, JOHN MURPHY, AND RCM BIOTHANE, LLC, Plaintiffs, v. RCM DIGESTERS, INC. AND MARK MOSER, Defendants/ Counterclaimants/ Third-Party Plaintiffs. | CIVIL NO. 06-4449(NLH)(JS) OPINION |

**APPEARANCES:**
Richard J. Kravitz, Esquire
Mukti Naresh Patel, Esquire
Patricia C. McManus, Esquire
Fox Rothschild, LLP
Princeton Pike Corporate Center, Building 3
997 Lenox Drive
Lawrenceville, NJ 08648-2311
   *Attorneys for Plaintiffs*

William J. DeSantis, Esquire
Joseph Kenney, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Main Street
Suite 500
Voorhees, NJ 08043

James C. Duda, Esquire
Eric D. Beal, Esquire
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115
   *Attorneys for Defendants/Counterclaimants/Third-Party
   Plaintiffs*

**HILLMAN**, District Judge

   Currently pending before the Court is plaintiffs' third partial motion for summary judgment on defendants' counterclaims.

As this case[1] has already involved several opinions, the extensive background will not be stated again here, other than to summarize that plaintiffs and defendants once operated a joint venture, RCM Biothane, a business that promoted, designed, built, and sold anaerobic digester systems, but as of August 7, 2006, their business relationship terminated. The main issue in the case is the effect and validity of the Separation Agreement drafted on August 7, 2006. Tangential to that issue are various claims, including the ones that are the subject of plaintiffs' third summary judgment motion--defendants' counterclaims for fraud, breach of the covenant of good faith and fair dealing, trademark infringement, unlawful interference with prospective economic advantage, breach of the confidentiality agreement, misappropriation of trade secrets, violation of the Anti-cybersquatting Act, a demand for an accounting, breach of the duty of loyalty and duty of care, mismanagement, self-dealing, usurpation of corporate opportunities, corporate waste, and for punitive damages. As discussed below, plaintiffs' motion will be denied.

## DISCUSSION

As demonstrated by the two very different tales told by the parties, and the opposing views of the same conduct, all supported

---

[1] This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

by evidence, whether it be documentary or based on testimony to be evaluated by a jury, issues of material and disputed fact exist as to all of the claims that are the subject of plaintiffs' current motion.[2]  Accordingly, the Court will only address the arguments that plaintiffs contend are issues that can be resolved as a matter

---

[2] The summary judgment standard was set forth in the March 31, 2009 Opinion addressing plaintiffs' first motion for partial summary judgment.  In their motion for reconsideration of the Court's October 14, 2009 Opinion denying Plaintiffs' second motion for partial summary judgment, plaintiffs took issue with fact that the Court did not restate the standard.  The standard applied in the Court's first two opinions and applied now is set forth below.  Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).  An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).
   Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

of law.

First, plaintiffs contend that defendants' fraud claims as to the parties' agreements prior to the Separation Agreement--the Asset Purchase Agreement, the Operating Agreement, the Employment Agreement, and other various agreements--are barred because tort actions are not cognizable when valid contracts govern the parties' conduct that is the subject of the alleged fraud.  That is a correct legal premise generally.  See International Minerals and Min. Corp. v. Citicorp North America, Inc., 736 F. Supp. 587, 597 (D.N.J. 1990) ("It has . . . consistently been held that an independent tort action is not cognizable where there is no duty owed to the plaintiff other than the duty arising out of the contract itself.").  Here, however, it is inapplicable because defendants claim that plaintiffs intentionally and falsely misrepresented material facts to defendants to induce them to enter into these agreements.  See Lo Bosco v. Kure Engineering Ltd., 891 F. Supp. 1020, 1033 (D.N.J. 1995) ("[D]etermining whether a situation is 'essentially contractual' where the legal elements of fraud also exist will not always be straightforward. On balance, however, the Court finds that the situation presented here is such that an allegation of fraud may be maintained alongside the contract claim.  . . . [T]he disappointed promisee is an individual who alleges he was lied to by other individuals proposing a joint venture.  The Court has found that it remains to be litigated

4

whether the representations of intent to enter into an agreement were actually made. . . . [I]f such representations were made, they were a knowing and intentional falsehood."). Thus, defendants' fraud claims will not be dismissed on this basis.

Plaintiffs also argue that defendants' claim for breach of the implied covenant of good faith and fair dealing must be dismissed as a matter of law for the same reason. Again, that premise is not applicable in this case. See Seidenberg v. Summit Bank, 791 A.2d 1068, 1077 (N.J. Super. Ct. App. Div. 2002) ("The guiding principle in the application of the implied covenant of good faith and fair dealing emanates from the fundamental notion that a party to a contract may not unreasonably frustrate its purpose."); cf. Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1130 (N.J. 2001) ("[An] allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive.").

Third, plaintiffs contend that defendants' claims for trademark infringement, unlawful interference with prospective economic advantage, breach of the confidentiality agreement, and misappropriation of trade secrets should be dismissed as a matter of law because of defendants' inability to provide proof of damages. More specifically, plaintiffs argue that defendants' expert does not articulate any damages causally related to these claims. Because it is a fundamental principle that a plaintiff must prove damages with a reasonable degree of certainty, and

5

defendants have failed to do so for these claims, they must be dismissed.

Plaintiffs' premise is generally correct.  A plaintiff must "prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate," because damage awards may not be based on mere speculation.  Kelly v. Berlin, 692 A.2d 552, 558 (N.J. Super. Ct. App. Div. 1997) (citations omitted). Plaintiffs' argument, however, does not apply here.

For their unlawful interference with prospective economic advantage claim, defendants are required to prove (1) their expectation of economic benefit; (2) plaintiffs' knowledge of that expectation; (3) plaintiffs' wrongful, intentional interference with that expectancy; (4) the reasonable probability of benefit to the defendants in the absence of that wrongful interference; and (5) damages.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993).  Despite plaintiffs' argument to the contrary, defendants' expert links that claim with $678,287 in denied profits owed to defendants.

With regard to defendants' other claims, proving damages to a "reasonable degree of certainty" is not necessary.  For their trademark infringement claim, in order for defendants to prove a violation of their mark, they need only show a likelihood of confusion, and not damages extending from actual confusion.  Video

Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 275 F. Supp. 2d 543, 575 (D.N.J. 2003) (explaining the difference between proving liability and damages).  Further, rather than proving actual damages on their end, if they prove liability, defendants would be entitled to recover plaintiffs' profits, the costs of the action, and possibly reasonable attorney fees.  See 15 U.S.C. § 1117(a); Video Pipeline, 275 F. Supp. 2d at 575 (explaining that the remedy of the recovery of profits "flows not from the plaintiff's proof of its injury or damage, but from its proof of the defendant's unjust enrichment or the need for deterrence").[3]

    For defendants' breach of the confidentiality agreement claim, defendants need only prove a breach of the contract, and no actual damages.  Video Pipeline, 275 F. Supp. 2d at 568 (explaining that a plaintiff who proves a breach of contract but no actual damages may not recover more than nominal damages).  Similarly, for defendants' misappropriation of trade secrets claim, they are not required to establish damages to prove their claim.  Ace American Ins. Co. v. Wachovia Ins. Agency Inc., 2008 WL 4165746, *4 (D.N.J. 2008) (quoting Rohm and Haas Co. v. Adco Chemical Co., 689 F.2d 424, 429-30 (3d Cir. 1982) (applying New Jersey law)) (explaining

---

[3]Plaintiffs also argue that they are entitled to judgment in their favor on defendants' trademark violation claim because defendants cannot offer any proof to support their claim, which is based on plaintiffs' posting of the "RCM" mark in a photograph displayed at a trade show in October 2006.  Because this claim depends on the resolution of disputed issues of fact, plaintiffs are not entitled to summary judgment.

that to prove a misappropriation of trade secrets claim, a plaintiff must show: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff").[4]  Accordingly, defendants' claims for trademark infringement, unlawful interference with prospective economic advantage, breach of the confidentiality agreement, and misappropriation of trade secrets will not be dismissed as a matter of law on the basis of insufficient damages.

   Next, plaintiffs argue that defendants' Anti-cybersquatting Act claim must be dismissed as a matter of law because defendants have not presented any proof that plaintiffs used or profited from the rcmdigesters.com domain name.  To prevail on such a claim, defendants must prove that plaintiffs had a bad faith intent to

---

[4]Plaintiffs also seek judgment in their favor on defendants' trade secret claim because they argue that defendants cannot establish the elements of the claim.  Specifically, they argue that because information on how to create an agricultural digester system is posted on the internet by other entities which have created similar systems, defendants do not actually own a trade secret, and therefore they cannot maintain such a claim.  As the Court finds that defendants have presented sufficient evidence to demonstrate issues of material fact with regard to this claim (not limited to evidence that defendants' digester system is different from the other systems, and the information on the internet is full of inaccuracies), plaintiffs' argument for summary judgment on this basis is not persuasive.

8

profit from rcmdigesters.com.  15 U.S.C. § 1125(d)(1)(A).  A "bad faith intent to profit" can be demonstrated by "the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct."  Id. § 1125(d)(1)(B)(VI).  Further, defendants must also prove that plaintiffs "register[ed], traffic[ked] in, or use[d]" that domain name.  Id. § 1125(d)(1)(A).

Defendants have provided evidence that until November 6, 2006, rcmdigesters.com was owned by plaintiff Biothane Corporation, until it transferred the name back to defendants.  Defendants also claim that plaintiffs held their domain name hostage to allow plaintiffs to secretly copy their computer files and to inhibit their ability to market their business.  Thus, even taking as true plaintiffs' contention that they did not use the domain name, they "registered" it, and disputed facts exist as to plaintiffs' bad faith regarding it.  Thus, defendants' Anti-cybersquatting Act claim cannot be dismissed as a matter of law.

Fifth, plaintiffs argue that defendants' request for an accounting of the income and gross profits that plaintiffs purportedly obtained from their allegedly wrongful conduct is moot because discovery is closed, and defendants have had their expert accountant prepare a report itemizing their alleged damages.

9

Defendants point out, however, that their expert has not calculated plaintiffs' "ill-gotten profits" for such claims as the improper taking of their computer files and misappropriating trade secrets, to name two. The Court agrees with defendants that their request for an accounting has not been mooted.

Sixth, plaintiffs argue that Moser has improperly asserted derivative claims on behalf of RCM Biothane because these issues were resolved by the Separation Agreement. This argument is without merit because the effect and validity of the Separation Agreement is still in dispute. Further, the Court addressed the derivative claims issue in the March Opinion. (See March 2009 Op. at 19-21.)

Next, plaintiffs contend that certain claims against the individual plaintiffs are not sustainable. With regard to defendants' claim that JOHI breached the Employment Agreement, plaintiffs argue that because JOHI is not a party to that contract, it cannot be held to have breached it. In contrast, defendants argue that because the Operating Agreement references and incorporates the Employment Agreement, and in the Operating Agreement, JOHI promised to make payments to Moser pursuant to the Employment Agreement, JOHI intended to be bound by it, and can be held liable for its failure to make those payments.

"It is axiomatic that no contract exists in the absence of a mutual intent to be bound," <u>International Minerals and Min. Corp.</u>

10

v. Citicorp North America, Inc., 736 F. Supp. 587, 594 (D.N.J. 1990), and "[i]t goes without saying that a contract cannot bind a nonparty," E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002).  Here, however, JOHI's own claim against Moser evidences an intent to be bound by the Employment Agreement.  JOHI has claimed that in the event the Separation Agreement is found not to have nullified the Employment Agreement, Moser has breached that contract, and because of that breach, JOHI is entitled to damages. (Compl. ¶ 89, and p. 18.)  It also goes without saying that JOHI cannot sue for breach of a contract that it now disclaims that it is a party to.  Cf. Szczepanik v. Through Transport Mut. Ins. Ass'n, Ltd., 2008 WL 2166193, *3 (D.N.J. 2008) (explaining in the third-party beneficiary context that "[t]he law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. 'The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract'" (citation omitted)).  Thus, defendants' counterclaim against JOHI may stand.

　　　With regard to defendants' claims against the individual plaintiffs, plaintiffs argue that there is no evidence linking them to the alleged conduct.  As a primary matter, since the filing of plaintiffs' motion, the parties have stipulated to the dismissal of Count 9 as to all individual plaintiffs, and the dismissal of Counts 18, 19, 20, and 22 as to the individual defendants Martin

11

Kaplan, Ron Kaplan, Graig Rosenberger, and Michael Holtz.  (Docket No. 194.)  Thus, plaintiffs' argument with regard to these claims is moot.

As to Counts 18-22 that remain against John Murphy and Robert Sax, and Count 21 against the other individual plaintiffs, they concern defendants' claims that these plaintiffs are responsible and liable for the theft of defendants' electronic data.  In arguing that the claims should be dismissed, plaintiffs simply state that there is no evidence that they were involved in any of the conduct complained of.  The Court, however, has already addressed plaintiffs' arguments on these claims in its October Opinion, and, therefore, they do not need to be addressed again.

Finally, plaintiffs argue that defendants cannot maintain a claim for punitive damages.  They argue that punitive damages may only be awarded in the case of clear and convincing proof of actual malice or action taken wantonly or willfully, and there is no proof that they acted in such a manner.  Further, plaintiffs argue that punitive damages are not available for contract claims.

As to plaintiffs' first premise, it will be up to the jury to determine whether plaintiffs' actions rise to the requisite level to garner punitive damages.  Correspondingly, it is also up to the jury to determine whether plaintiffs' actions with regard to defendants' claims for breach of contract are sufficient to scale the usual bar against such damages.  See Sandler v. Lawn-A-Mat

12

Chem. & Equip. Corp., 358 A.2d 805 (N.J. Super. Ct. App. Div.), cert. denied, 366 A.2d 658 (N.J. 1976) ("While punitive damages are usually not awarded in litigation involving breach of a commercial contract, they may be awarded where there is a breach of trust between the parties beyond the contractual breach."); Stony Brook Constr. Co., Inc. v. The College of New Jersey, 2008 WL 2404174, *8 (N.J. Super. Ct. App. Div. 2008) ("[A] breach of contract, even if intentionally committed, does not warrant an award of punitive damages unless the defendant also breached a duty independent of the contract.  For example, punitive damages are not awarded unless the breach also constitutes a tort for which punitive damages are recoverable, or there is a fiduciary relationship between the parties." (internal citations omitted)).  Thus, defendants' punitive damages claim may stand.

## CONCLUSION

For the reasons expressed above, plaintiffs' motion for partial summary judgment is denied.  An appropriate order will be entered.


Date: December 11, 2009                       s/ Noel L. Hillman

At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

13